UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JAMI K. WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4: 16 CV 794 DDN |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Jami K. Williams for disability insurance benefits (DIB) and supplemental security income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401- 434, 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is reversed and remanded for further proceedings consistent with this opinion.

## I. BACKGROUND

Plaintiff was born in 1981 and was 32 years old at the time of her hearing. (Tr. 21, 225.) In her applications she alleged a December 1, 2012 onset date and that she was disabled due to glaucoma and blindness in her right eye. (Tr. 175.) Her applications were denied, and she requested a hearing before an ALJ. (Tr. 79-86.) On September 23, 2014,

---

[1] The Hon. Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted in her official capacity for Carolyn W. Colvin as the defendant in this suit. 42 U.S.C. § 405(g) (last sentence).

following a hearing, an ALJ found that plaintiff was not disabled under the Act. (Tr. 47-58.)

On January 11, 2016, the Appeals Council denied plaintiff's request for review. (Tr. 15-18.) On April 5, 2016, the Appeals Council set aside its January 2016 decision to consider additional evidence submitted by plaintiff, but found no reason to accept review of the ALJ's decision, so again denied review. (Tr. 1-5.) Thus, the ALJ's decision stands as the final decision of the Commissioner subject to judicial review. (Tr. 1-4.)

## II. MEDICAL AND OTHER HISTORY

Plaintiff was diagnosed with bilateral uveitis, a form of eye inflammation, and uveitic glaucoma, which is glaucoma resulting indirectly or directly from uveitis. (Tr. 328, 431, 442.)

On December 16, 2011, plaintiff was seen at Barnes-Jewish Hospital for eye pain. She was diagnosed with uveitic glaucoma and a corneal abrasion. She experienced variable light sensitivity or photophobia, blurred or cloudy vision, tearing, and eye pain with headaches. (Tr. 261-65.) She was seen in the emergency room there on December 1, 2012, after experiencing a change in vision in her right eye, right eye pain and decreased vision, and headache. (Tr. 281-90.) She was seen again on January 27, 2013, after her right eye "went black" and felt as if there was a film over it. She was discharged with instructions to follow up at the eye clinic at Washington University School of Medicine. (Tr. 306-20, 337.)

Plaintiff was treated at the Washington University School of Medicine Department of Ophthalmology on a regular basis. She continued to experience variable vision in her right eye throughout the day, and both pressure and inflammation remained chronic issues. (Tr. 358-59, 360-61, 363-64, 372-73, 376-82, 384, 386-91, 396, 406-21, 425-28, 440-41). Between December 2012 and February 2013, plaintiff underwent outpatient laser iridotomy, a procedure for treating glaucoma, to her right eye on five occasions. (Tr. 286, 291, 334-36, 367, 396, 399-400, 403.)

Plaintiff's uncorrected visual acuity in her right eye ranged from 20/25 to 20/300. Her uncorrected visual acuity in her left eye ranged from 20/20 to 20/125. (Tr. 283, 306, 363-64, 369, 376, 378, 380, 382, 384, 388, 406, 408, 410, 412, 414, 416, 418, 420, 424, 427, 429, 432-36, 438, 537-38, 543.)

In July 2013, plaintiff began seeing Kimberly Hsu, M.D., an ophthalmologist and corneal specialist at Washington University School of Medicine, on a monthly basis. (Tr. 424-39, 537-38, 543-44.) Dr. Hsu provided three opinion statements. (Tr. 424-25, 431, 442, 542). On December 9, 2013 correspondence, Dr. Hsu stated plaintiff's diagnoses were bilateral uveitis and uveitic glaucoma with a history of right eye glaucoma surgery. She was currently being treated with a number of eye drops. Dr. Hsu opined that plaintiff "may have mild impairment of her vision related to this, but should be ok for most activities that do not require detailed vision." (Tr. 431, 442.)

On March 11, 2014, Dr. Hsu completed a Vision Questionnaire. In it, Dr. Hsu stated that plaintiff had been treated at Washington University Eye Clinic since 2011and that she had personally treated plaintiff there since July 2013. She prognosed plaintiff as "currently stable" and diagnosed bilateral uveitis with glaucoma. (Tr. 424.) Visual acuity of her right eye was best corrected to 20/30. Visual acuity of her left eye was best corrected to 20/25. Dr. Hsu stated plaintiff's symptoms included "blurry vision" and possible pain if there was a flare up of uveitis. She believed that plaintiff would occasionally be able to use near acuity, far acuity, depth perception, accommodation, color vision, and field of vision. (Tr. 424-25).

On May 14, 2014, Dr. Hsu signed a disability-based reduced fare application for the St. Louis public transportation system or "Metro." Dr. Hsu stated plaintiff required two accessibility features that must be present in order for plaintiff to use public transportation: (1) stop announcements; and (2) visual information display systems. (Tr. 542.)

Plaintiff saw Laila G. Gabrawy, M.D., an ophthalmologist, on February 13, 2013. Plaintiff had blurry vision without eye pain or itching. Dr. Gabrawy diagnosed an eye

disorder, myopia, astigmatism, keratitis (inflammation of the cornea) in the right eye, iritis or inflammation of the iris, nuclear senile cataract, chronic primary angle-closure glaucoma, and glaucoma with uveitis. She suggested cataract and glaucoma surgery for plaintiff's right eye and follow up at Barnes-Jewish Hospital. (Tr. 326-28, 371.)

The record evidence demonstrates plaintiff stated on several occasions that she could not afford medical care and prescriptions. (Tr. 25, 31, 310, 337, 370-72.) Attending physician's notes from a January 27, 2013 emergency room visit at Barnes-Jewish Hospital state that plaintiff had run out of medications a week earlier because she was unable to afford them. The notes also state plaintiff underwent laser eye surgery on a weekly basis for a period of three weeks, but was unable to continue treatment due to inability to pay. (Tr. 310.) Plaintiff was also treated in the emergency room at Barnes-Jewish Hospital because she was unable to afford regular care at the eye clinic. (Tr. 337.) A Washington University management plan noted plaintiff probably needed steroids and long term immunosuppression. The plan also noted questionable compliance and social issues for payment of medications and surgery. (Tr. 370.) Arrangements were made by Washington University for plaintiff to receive glaucoma surgery and biologics treatment through ConnectCare. (Tr. 368, 371.)

**ALJ Hearing**

On March 19, 2014, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 21-46.) She had been living in a homeless shelter, but it had closed and she was now living at her mother's house until she could find other housing. She had attempted to work "doing hair" but would need to stop and put drops in her eyes for her light sensitivity. She stopped driving about a year ago and now uses buses. She stopped driving because she is unable to see when it is very sunny in which case she must slow down. It is difficult to drive on the highway when her eyes are itching and hurting. She either sees things that are not there or cannot see things. (Tr. 25-31.)

Upon waking in the morning, she sometimes cannot see out of her right eye. She has difficulty seeing in the dark and is very paranoid when she is out. She sometimes has little lights flash in her eyes. It is very difficult and she has tripped and fallen a couple of times. She is also very paranoid when she is alone because she has past experience from an abusive relationship. She has inflammation in her eyes as a result of an eye injury from that relationship. (Tr. 31-32.)

She is able to take care of her personal needs. However, she has difficulty with simple cooking tasks. She is sometimes able to assist with cleaning dishes or doing laundry, but is not able to sweep or vacuum. She shops at the grocery store with her parents at her sides so that she does not have to focus. She could probably read a newspaper if she removed her glasses and pulled the paper closer. She can watch a large screen television, but not a smaller one. She cannot use a computer for an extended period because it irritates her eyes. (Tr. 31-37.)

A vocational expert also testified at the hearing. The ALJ asked the vocational expert to consider a hypothetical individual who should not be exposed to any hazards, unprotected heights, hazardous machinery, and who should not engage in any commercial driving, fine precision work, or fast assembly line production type work. The vocational expert asked the ALJ to clarify whether the term "no fine precision" meant "near acuity" as defined in the Dictionary of Occupational Titles (DOT), as the DOT does not refer specifically to fine work. The vocational expert testified that the DOT defines near acuity as "clarity of vision of 20 inches or less." The ALJ stated that she did not think plaintiff had difficulty seeing objects that are 20 inches or less but that she did not want plaintiff to work with small objects and requiring precision in where those objects go. (Tr. 41-43.)

The vocational expert asked the ALJ if the limits imposed would relate to no fingering. The vocational expert testified that past work would not be available with the fingering restriction. Other jobs, however, would be available, including janitor and kitchen-helper, both of which were consistent with the DOT. (Tr. 43-45.)

## III. DECISION OF THE ALJ

On November 20, 2014, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 50-59.) At Step Two, the ALJ found that plaintiff had severe impairments of glaucoma, with uveitis of the right eye, myopia, and nuclear senile cataracts. (Tr. 52.) At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1, the Listing of Impairments. (Tr. 53.)

At Step Four, the ALJ determined that plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations: she must avoid all exposure to hazards, unprotected heights, hazardous moving machinery, commercial driving, and fingering. The ALJ explained that the fingering limitation accounted for difficulty seeing small objects. She was also unable to perform fast assembly line production type work. (Tr. 53-56.)

Using vocational expert testimony, the ALJ found that plaintiff's impairments would not preclude her from performing work that exists in significant numbers in the national economy, including work as a janitor/floor waxer and kitchen helper. Consequently, the ALJ found that plaintiff was not disabled under the Act. (Tr. 58.)

## V. GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. Id. As long

as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A), 1382c(a)(3)(A); Pate-Fires, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment. 20 C.F.R. § 416.920(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform past relevant work (PRW). Id. § 416.920(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. Pate-Fires, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. Id.; 20 C.F.R. § 416.920(a)(4)(v).

## V. DISCUSSION

Plaintiff argues the ALJ erred in (1) giving limited weight to the opinion of treating ophthalmologist Dr. Kimberly Hsu; and (2) failing to resolve the conflict between the job

description in the DOT, and its companion publication, Selected Characteristics of Occupations (SCO), in violation of SSR 00-4p. This court agrees in part and disagrees in part.

### 1. Opinion of Treating Ophthalmologist Kimberly Hsu, M.D.

Plaintiff argues that the ALJ erred in giving "little weight" to the opinion of treating specialist Kimberly Hsu, M.D., an ophthalmologist. This court agrees. Dr. Hsu provided three opinions addressing plaintiff's visual functional deficits. (Tr. 424-25, 431, 442, 542.) In December 2013 correspondence Dr. Hsu stated plaintiff "may have mild impairment of her vision related to [her diagnoses], but should be ok for most activities that do not require detailed vision." (Tr. 431, 442.) In March 2014, Dr. Hsu completed a "Vision Questionnaire," stating plaintiff's symptoms included blurry vision with "possible pain if flare of uveitis." (Tr. 424.) Dr. Hsu opined that plaintiff would occasionally (6-33% of a work day) be able to use near acuity, far acuity, depth perception, accommodation, color vision, and field of vision. (Tr. 425.) Finally, in May 2014, Dr. Hsu signed a disability-based reduced fare application for the St. Louis public transportation system or Metro, stating that plaintiff required two accessibility features in order for plaintiff to use public transportation: stop announcements and visual information display systems. (Tr. 542.)

A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record." 20 C.F.R. § 404.1527(d)(2). Unless the treating physician's opinion is unsupported by medically acceptable clinical or diagnostic date, the opinion of a treating physician is "entitled to great weight." Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007). A physician's statement that is not supported by diagnoses based on objective evidence will not support a finding of disability. Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003). See Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012) (ALJ may discount a physician's opinion if the opinion is internally inconsistent).

In this case the ALJ gave Dr. Hsu's opinion "some weight," limiting plaintiff to jobs with no exposure to hazards, unprotected heights, hazardous moving machinery, commercial driving, fingering, or fast assembly line production work. The ALJ further concluded that the greater limitations as set forth by Dr. Hsu were not supported by the underlying medical evidence and were therefore given some but not great weight. (Tr. 56.)

Plaintiff argues the ALJ failed to explain her rationale in adopting some but not others of the limits described by Dr. Hsu. She also argues the ALJ did not state why she assessed plaintiff's eye condition as impairing merely some forms of vision rather than producing occasional visual capacity generally or for her implied finding that plaintiff's color vision is completely unimpaired. If the ALJ discounts a treating physician's opinion, she should give "good reasons" for doing so. Davidson v. Astrue, 501 F.3d 987, 990 (8th Cir. 2007); 20 CFR § 404.1527(c)(2).

The ALJ did not give good reasons here. The ALJ discussed Dr. Hsu's opinions in general terms, giving them weight to the extent her own findings were in accord. In discussing plaintiff's credibility, the ALJ stated the medical records provided "normal observations" for periods when plaintiff's vision was "stable" or "improved" but not "normal." (Tr. 56.) The ALJ asserted, without citing record support, that the "medical evidence demonstrates that treatment and medications have been largely effective in improving and controlling the claimant's eye problems." Id. Referencing Dr. Hsu's December 2013 letter, the ALJ stated that plaintiff's vision is correctable to "nearly normal." (Tr. 56, 442.) However, the ALJ did not note that Dr. Hsu addressed only plaintiff's visual acuity measured during her most recent visit or that plaintiff may have mild impairment of her vision. Id.

The ALJ acknowledged Dr. Hsu's opinion that plaintiff could only occasionally perform activities requiring near acuity, far acuity, depth perception, accommodation, color vision and field of vision. The ALJ, however, gave it "some but not great weight," finding the limitations set forth by Dr. Hsu were not supported by the underlying medical

- 9 -

evidence to the extent they were greater than what she included in the residual functional capacity finding. (Tr. 56.) The ALJ did not state what the underlying medical evidence was that failed to support Dr. Hsu's opinion.

There must be a "principled reason to reject" a treating physician's opinion, even if offered in a Statement. Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005). "A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). Here, the ALJ's circular logic and nonspecific reference to conflicting underlying medical evidence is insufficient to meet the articulation required of an ALJ weighing treating physician opinion.

The ALJ also rejected Dr. Hsu's opinion without properly considering the factors set forth in 20 C.F.R. § 404.1527(c)(1)-(6). The ALJ failed to articulate consideration of all but one of the opinion-weighing factors, all of which would have enhanced the weight given to Dr. Hsu's opinion. Specifically, Dr. Hsu was a treating specialist, with a longitudinal view, who used laboratory and other diagnostic techniques, and who practiced within the hospital system with all other relevant medical records. (Tr. 53, 55-6, 424-39, 442, 537-38, 542-44). See 20 CFR § 404.1527(c)(6) (factors to consider include length and frequency of physician-patient relationship, the nature and extent of the treatment relationship, supportability, consistency, expertise, and other factors.) Moreover, the record evidence contained no other medical assessments that were supported by better or more thorough medical evidence than that of Dr. Hsu. See Bentley v. Shalala, 52 F.3d 784, 785-86 (8th Cir. 1995).

For all of the above reasons, the court concludes the decision of the ALJ is not supported by substantial evidence on the record as a whole.

### 2. Vocational Expert Testimony

Plaintiff next argues the ALJ erred in failing to identify or resolve the conflict between the job description information contained in the DOT and SCO, in violation of SSR 00-4p.

The ALJ asked the vocational expert a hypothetical question regarding an individual of plaintiff's age, education, past relevant work, and RFC. The vocational expert responded that such an individual could perform the jobs of janitor/floor waxer and kitchen helper, which jobs existed in significant numbers in the national economy. (Tr. 42-44.) Plaintiff asserts that although the ALJ found that she must avoid all exposure to hazards and hazardous moving machinery, it is "common knowledge" that the job of floor waxer involves exposure to hazardous moving machinery, as the floor waxing machine may cause problems with electric shock, and to hazards, as the chemicals used to clean the floors can be hazardous. She also notes that a kitchen helper must finger occasionally, and yet those requirements were precluded. She therefore argues the ALJ's findings and conclusions are not supported by substantial evidence.

Social Security Ruling 00-4p imposes an affirmative duty on the adjudicator to ask about any possible conflicts between the vocation expert evidence and information provided by the DOT. Soc. Sec. Rul. 00-4p. The Eighth Circuit construes SSR 00–4p as placing on the ALJ an affirmative responsibility to ask about "any possible conflict" between vocational expert evidence and the DOT, and to obtain an explanation for any such conflict, before relying on vocational expert evidence to support a determination the claimant is not disabled. Kemp v. Colvin, 743 F.3d 630, 633 (8th Cir. 2014).

The SCO discusses the hazards involved with the job of janitor/floor waxer (#381.687-034), and states that this job title never involves exposure to hazards or hazardous moving machinery. See Selected Characteristics of Occupations (SCO), p. 132 (copyright 1993). It further states that the job of janitor/floor waxer never involves a significant exposure to moving mechanical parts (MP); electric shock (ES); working in high, exposed places (HE); exposure to radiation (RA); working with explosives (EX); or exposure to toxic, caustic chemicals (TC). Id. at 132, App. D-2, Identification Key ID-2. An examination of this information, as discussed above, reveals there is no conflict between the two and the vocational expert correctly found that an individual with plaintiff's limitations could perform the job of janitor/floor waxer. Therefore, the ALJ

properly found the vocational expert's testimony addressing floor waxer was consistent with the information provided in the DOT and SCO.

Plaintiff also asserts that there was a conflict between the vocational expert testimony that plaintiff could perform the job of kitchen helper and the description of kitchen helper (#318.687-010) in the SCO, which indicates that occasional fingering is required. In this case, the ALJ asked the vocational expert about an individual who could not perform work involving fine precision, and the vocational expert asked if this restriction would apply to an individual's fingering ability. The ALJ responded that plaintiff could work with objects that were 20 inches or less but did not want plaintiff to be required to work putting small objects together, to which the vocational expert again suggested a fingering restriction. The ALJ did not agree that plaintiff was incapable of performing the work of a kitchen helper as described in DOT, which involves cleaning pots and pans, washing tables, unloading food supplies, cleaning off plates, etc. but that plaintiff should not perform work which involved putting small objects together. (Tr. 42-44.)

As described in the DOT and SCO, the kitchen helper job includes a fingering aspect, including duties that include scraping food, doing dishes, polishing silver, peeling vegetables with a knife, or transferring supplies by hand. 1991 WL 672755 (4th ed. rev. 1991). The vocational expert testified that plaintiff could not perform her past work because of the fingering limitation, but did not identify the conflict with regard to the kitchen helper job. (Tr. 43.) The ALJ asked the vocational expert whether the jobs he cited in the testimony were consistent with the DOT and the vocational expert answered yes. (Tr. 45.) The ALJ determined that pursuant to SSR 00-4p, the vocational expert's testimony was consistent with the information contained in the Dictionary of Occupational Titles. (Tr. 58.)

Therefore, while the topic of fingering was discussed, the record does not reflect that it was discussed by identification and resolution of a conflict pursuant to SSR 00-4p. This court finds there is a conflict between the vocational expert testimony and the

information contained in the DOT and SCO as to the kitchen helper job.  However, if even one job mentioned by the vocational expert supports the ALJ's finding, that is sufficient to sustain the ALJ's decision.  See Weiler v. Apfel, 179 F.3d 1107, 1110-11 (8th Cir. 1999) ("We need not exhaustively compare [claimant's] residual functional capacity to every job recommended by the vocational expert.")  Based on the vocational expert testimony, the ALJ properly found that plaintiff could perform jobs that existed in significant numbers in the national economy, including work as a janitor/floor waxer.

## V.  CONCLUSION

For the reasons set forth above, pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and the case is remanded for further proceedings.  On remand, the Commissioner must direct the ALJ to reevaluate the treating source's medical opinions and provide principled reasons for granting these opinions either substantial or little weight, comporting with the requirements of 20 C.F.R. § 404.1527(d)(2).

An appropriate Judgment Order is issued herewith.


    /s/ David D. Noce    
**UNITED STATES MAGISTRATE JUDGE**

Signed on May 15, 2017.